**Opinion filed May 29, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00335-CV

_____

## IN THE INTEREST OF L.L., A CHILD

**On Appeal from the 118th District Court**

**Howard County, Texas**

**Trial Court Cause No. 49,472**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of L.L.'s parents. L.L.'s mother appeals.[1] We affirm.

I. *Issues Presented*

The mother presents three issues on appeal. In all three issues, she challenges the sufficiency of the evidence. She argues that the evidence is insufficient to support the findings made by the trial court pursuant to the Family Code. *See* TEX. FAM. CODE ANN. § 161.001(1)(N), (O), (2) (West 2014).

---

[1]We note that the father did not appeal.

## II. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. FAM. § 161.001. To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination

may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found that the mother had committed two of the acts listed in Section 161.001(1)—those found in subsections (N) and (O). Specifically, the trial court found that the mother had constructively abandoned the child and that the mother had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the child, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parents for abuse or neglect. The trial court also found, pursuant to Section 161.001(2), that termination of the mother's parental rights would be in the best interest of the child.

### III. *Evidence at Trial*

The record shows that the Department became involved with L.L. shortly after his birth. The Department received a referral while the mother and L.L. were still in the hospital. The parents had been involved in some sort of conflict at the hospital and had engaged in "erratic behavior" directed at the hospital staff. The mother had prior history with the Department, and the Department was concerned for the safety of L.L. Upon the Department's request, the parents initially placed L.L. with a relative. About two weeks later, the Department filed a petition to remove the child due to safety concerns.

One reason for the safety concerns was domestic violence, which occurred between the parents and in the mother's previous relationships. L.L. was the mother's fourth child; all three of the mother's other children had been removed from her care, and her rights to at least two of those other children had been terminated. One of L.L.'s older siblings had been seriously injured by the sibling's father, who was jailed for the offense; he was not L.L.'s father.

3

The mother agreed to comply with a court-ordered family service plan, and the record shows she completed a majority of the required services. However, the mother did not stay in touch with the Department and did not regularly visit L.L. The Department also had concerns with the mother's individual counseling. The record shows that, at the time of trial on November 12, 2014, L.L. was almost one year old. The mother had not visited L.L. since July 24, 2014. Even prior to July 24, the mother had missed some scheduled visits and had not regularly visited L.L. The Department's caseworker testified that the mother had "become very uninvolved within these past months." The mother "was just not going to the visits" even though L.L. was being driven from Midland to Big Spring, where the mother lived, for visitation.

The mother testified that, at the time of trial, she had been living with her great-grandmother for four months and working at Dairy Queen for three months. She admitted she did not stay in touch with the Department very well while this case was pending and missed some visits with L.L., but she said she had completed her services.

At the time of trial, L.L. had been in the same placement for ten or eleven months. He was "thriving" in that placement, and the Department had no concerns about the appropriateness of the placement home. L.L. was walking and talking, and his health had improved since being placed in the home. The Department's plan for L.L. was termination of the parents' rights and unrelated adoption. The home in which L.L. had been placed was a prospective adoptive home, and the placement parents had expressed a desire to adopt L.L.

The caseworker testified that the Department felt it would be in the best interest of L.L. for the trial court to terminate the mother's parental rights and allow L.L. to be adopted by the placement parents. The attorney ad litem for L.L. recommended that the trial court terminate the parental rights of both parents, and

4

he informed the trial court that he believed termination would be in L.L.'s best interest.

## IV. *Analysis*

We have reviewed all of the evidence presented at trial, and we hold that the evidence as set forth above is legally and factually sufficient to support the trial court's finding under Section 161.001(1)(N). The Department produced clear and convincing evidence from which the trial court could reasonably have formed a firm belief that the mother had constructively abandoned L.L. To support a finding of constructive abandonment, the Department must have shown that L.L. had been in the managing conservatorship of the Department for at least six months, that the Department had made reasonable efforts to return L.L., that the mother had not regularly visited or maintained significant contact with L.L., and that the mother had demonstrated an inability to provide L.L. with a safe environment. *See* FAM. § 161.001(1)(N). The undisputed evidence shows that the Department had been L.L.'s managing conservator for almost a year. The record also shows that the Department had worked with the mother and had made reasonable efforts to return L.L. to the mother but that the mother did not stay in touch with the Department. The evidence further indicated that the mother had not regularly visited or maintained significant contact with L.L. There was also evidence of domestic violence, erratic behavior, prior terminations, and serious injury to one of the mother's older children from which the trial could reasonably have formed a firm belief that the mother was unable to provide L.L. with a safe environment. Therefore, we hold that the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(1)(N). *See In re J.A.L.*, No. 11-13-00191-CV, 2013 WL 7083191 (Tex. App.—Eastland Dec. 19, 2013, no pet.) (mem. op.); *In re N.R.T.*, 338 S.W.3d 667, 673–75 (Tex. App.—Amarillo 2011, no pet.). We overrule the mother's second issue on appeal. Because a finding that a parent

committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required under the statute, we need not address the mother's first issue in which she challenges the finding under subsection (O). *See* TEX. R. APP. P. 47.1.

In her third issue, the mother challenges the finding that termination of her parental rights is in the best interest of L.L. We hold that, based on clear and convincing evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's parental rights would be in the best interest of L.L. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the emotional and physical needs of L.L. now and in the future; the emotional and physical danger to L.L. now and in the future; the parental abilities of the mother and the placement parents, who wish to adopt L.L.; the plans for L.L. by the Department; the instability of the mother's home; the stability of L.L.'s placement; and the acts and omissions of the mother indicating that the parent-child relationship was not a proper one, we hold that the evidence is sufficient to support the finding that termination of the mother's parental rights is in L.L.'s best interest. *See id.* The mother's third issue is overruled.

### V. *This Court's Ruling*

We affirm the order of the trial court.

MIKE WILLSON
JUSTICE

May 29, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.